# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:12-cr-13-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| LEO MCINTYRE, JR., | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 348). Defendant is currently serving a 140-month sentence at Edgefield Federal Correctional Institution, after being convicted of Robbery by Force or Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 1951(a) and 2. Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. The Government has responded in opposition to the motion.

## I. BACKGROUND

On July 21, 2011, the Rowan County, North Carolina, Sheriff's Office was dispatched to a home in Mooresville concerning an armed robbery. Upon arrival, officers spoke with the residence's owner, who reported that he, his wife, another individual, and three grandchildren "were sitting in the front yard of the residence when a gold Chevrolet Lumina containing two black males, later identified as Roderick Hardin and Otis Sutton, pulled into the driveway." (Doc. No. 221, Presentence Report ("PSR") at ¶ 7). Hardin and Sutton got out of the car and walked toward the group. One of the victims confronted the two individuals and Sutton pointed a shotgun at the victim and Hardin demanded money. In response, the victim produced his

-1-

Case 3:12-cr-00013-MOC-DCK   Document 353   Filed 03/31/21   Page 1 of 9

wallet, but Hardin said they wanted what was inside. (Id.). Everyone was ordered inside, at which time there was an altercation between the victim and Sutton. Sutton threatened to shoot everyone and the victim relented and brought Hardin to the safe inside the house. (Id.). Hardin took money out of the safe and then he and Sutton tide up all the victims with a rope and a belt and made them lie on the floor. (Id.).

One victim was hit in the head with the gun and sustained a wound that required medical attention. Hardin and Sutton made three trips back and forth from the safe to the car, removing duffel bags full of money. In total, $1.5 million was removed by Sutton and Hardin. (Id.). A confidential information (CI) told authorities that Defendant contacted the CI to help Hardin with the robbery. (Id. at ¶ 8). The CI saw Defendant in possession of large sums of money and had also met with Defendant and Hardin at a storage facility that Hardin had rented in Charlotte. (Id.). A search warrant was executed on the storage unit and more than $550,000 in cash was seized. After Hardin was arrested, he was interviewed and reported that Defendant "assisted in the planning of the robbery of the [victims] and also provided Hardin with a cell phone, money, and a handgun once [Hardin] had gotten out of jail." (Id. at ¶ 9).

On October 26, 2012, Defendant pleaded guilty to Robbery by Force or Violence and Aiding and Abetting, in violation of 18 USC §§ 1951(a) and 2. (Doc. No. 131). On August 29, 2013, this Court sentenced Defendant to 140 months imprisonment, 3 years of supervised release and was ordered to pay $1.5 million in restitution, to be paid jointly and severally with his codefendants. See (Doc. No. 251). According to the Bureau of Prisons ("BOP") records, Defendant's current projected release date with full good time credit is September 12, 2021. As of February 24, 2021, BOP calculated that Defendant had served 9 years, 4 months, and 21 days,

or about 80.5% of his full term (and about 94.4% of his statutory term).

Defendant is currently serving his sentence at Edgefield Federal Correctional Institution ("Edgefield"), a medium security facility with an adjacent minimum security satellite camp in Edgefield, South Carolina. Edgefield has a total of 1,489 inmates. As of March 14, 2021, one inmate and 23 staff members at Edgefield are positive for COVID-19. 218 inmates and 10 staff members previously tested positive for COVID-19 and have since recovered. Unfortunately, three inmates have died. To address this outbreak, Edgefield has implemented specific procedures in addition to the standard COVID-19 protocols required by BOP. Consistent with CDC guidance, the BOP has begun administering vaccines to inmates and staff at Edgefield. As of March 14, 2021, 74 inmates and 159 staff have received both doses of the COVID-19 vaccine. COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/. As of March 16, 2021, Defendant has received his first dose of the vaccine. See (Doc. No. 352, Gov't Supp.).

On September 21, 2020, Defendant made an administrative request of the warden for compassionate release, claiming that he has "high blood pressure, high cholesterol, obesity, and borderline diabetic." (Gov't Ex. 1). He provided a release plan. (Id.). On December 2, 2020, the Warden denied Defendant's compassionate release request, finding that Defendant did not meet the criteria of a debilitated medical condition. The warden further found that the "nature of your crime included violence and despite your illness, you could be capable of reoffending and placing the community at significant risk." (Id.).

On February 11, 2021, Defendant filed the pending, pro se motion for compassionate relief under 18 U.S.C. § 3582(c)(1)(A), seeking a sentence reduction resulting in his immediate

-3-

release from the custody of BOP.[1]  See (Doc. No. 348).  Defendant asserts that his medical conditions, including obesity, hypertension, and high cholesterol, justify his request for this extraordinary relief.

## II.     DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A)(i).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[2]  As relevant here, the non-binding

---

[1]  Defendant also raises claims of alleged BOP violations of his rights under the Fifth and Eighth Amendments based on the COVID-19 outbreak at the prison.  Claims under the Fifth and Eighth Amendments are properly brought in the district of confinement, not through a motion for compassionate release.  See United States v. Henderson, 2020 WL 4569603, at *3 (W.D.N.C. Aug. 7, 2020); United States v. Rodriguez-Collazo, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020).  This Court, therefore, does not address Defendant's Fifth and Eighth Amendment claims against the BOP.

[2]  In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act.  United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i).  Id. at 281–83.  The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release.  Id.  In place of the no-longer-applicable policy statement, McCoy permits "courts [to]

-4-

policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently

---

make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Defendant appears to have health issues that likely make him more susceptible to becoming seriously ill if

-6-

Case 3:12-cr-00013-MOC-DCK   Document 353   Filed 03/31/21   Page 6 of 9

he were to contract COVID-19—that is, he suffers from obesity, hypertension, and high blood pressure, which may place him at an increased risk for severe illness from COVID-19. Defendant is not entitled to compassionate release under § 3582(c)(1)(A) because he has not established a particularized risk of contracting the disease at his prison facility. There is no evidence that Defendant has been unable to provide self-care while in BOP custody, nor is there any evidence that Defendant has not been able to receive adequate medical care. Similarly, Defendant's claims about the conditions at Edgefield, which are applicable to all of the nearly 1,400 inmates there, do not create "extraordinary and compelling" reasons to grant Defendant's motion. See, e.g., United States v. Hegyi, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own."). Thus, although Defendant's medical conditions present an "extraordinary and compelling" reason for compassionate release, he has not shown that he faces a particularized risk of contracting COVID-19 at Edgefield. Finally, as the Government notes in a supplemental filing, as of March 16, 2021, Defendant had received his first dose of the vaccine, which even further minimizes his risk of becoming seriously ill should he contract COVID-19. See (Doc. No. 352).

Even if Defendant could give an extraordinary and compelling reason for compassionate release, the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment,

afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13cr133(DJN), 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)).

Section 3553(a) also instructs courts to "consider the kinds of sentences available and the sentencing range established for the offense." United States v. Nabaya, No. 3:17cr3, 2021 WL 54361, at *4 (E.D. Va. Jan. 6, 2021) (quoting 18 U.S.C. § 3553(a)(4)). Further, the Sentencing Commission policy statement, U.S.S.G. § 1B1.13, instructs courts to consider the factors set forth in 18 U.S.C. § 3142(g), including "the nature and circumstances of the offense charged …; the history and characteristics of the person …; [and] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id. (quoting 18 U.S.C. § 3142(g)).

Here, the relevant statutory sentencing factors do not support compassionate release. First, the seriousness of Defendant's offense weighs heavily against release. As discussed, Defendant assisted in the planning of the robbery in a home invasion/armed robbery involving six victims, including three children. As detailed in the PSR, Defendant provided a co-defendant with a cell phone, money, and a handgun. See (Doc. No. 221 at ¶ 9). Moreover, Defendant's criminal history underscores that the statutory sentencing factors do not support his request for release. Defendant presents a serious risk of recidivism given that he committed this offense after having served significant time in prison for previous offenses. At sentencing, Defendant's criminal history score was a 10, establishing a criminal history category of V. (Doc. No. 221 at ¶ 46). In addition to the serious conviction described above, Defendant has a lengthy criminal history, and he was under a criminal justice sentence for Grand Larceny at the time of the

underlying offense. (Id. at ¶ 45). Given Defendant's lengthy criminal history, the nature of his crimes, and his risk of recidivism, compassionate release is not appropriate because Defendant presents a danger to the safety of others and the community. See 18 U.S.C. § 3142(g). Accordingly, in light of Defendant's criminal history, the totality of relevant circumstances, and the § 3553(a) factors, this Court denies Defendant's motion for a sentence reduction.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 348), is **DENIED**.

Signed: March 30, 2021

Max O. Cogburn Jr
United States District Judge